FRANK YOUTSEY et al., Appellees, v. T. F. LEMLEY, Appellant.

**PARTNERSHIP:** Authority of Partner—Private Affairs of Co-
1.  Partner.   It is very elementary that a partnership relation alone gives one partner no authority to contract with reference to the private contracts of his co-partner.

**PAYMENT:** Pleading—Burden of Proof.   Payment is an affirmative
2   defense with the burden of proof on him who alleges it.

**EVIDENCE:** Opinions—Conclusions—Justifiable Exclusion.   The ex-
3   clusion of a question so framed as to strongly suggest a conclusion-answer is especially justified (a) when the party making the inquiry makes no suggestion as to what he expects to prove, and (b) the witness was not thereafter questioned as to any specific facts in reference to the matter.

**NEW TRIAL:** Newly Discovered Evidence—Diligence.   "Due dili-
4   gence" in the discovery of new matters of evidence is not shown

when such new matters might have been readily brought out from the same witness when he was testifying at the trial.

*Appeal from Lucas District Court.*—HON. F. M. HUNTER, Judge.

MONDAY, MARCH 15, 1915.

THE opinion states the nature of the action and the material facts.—*Modified* and *Affirmed.*

*Hickman & Wells,* for appellant.

*J. A. Penick* and *E. A. Anderson,* for appellee.

WEAVER, J.—The action was brought at law to recover a money judgment. The petition is not set forth in the abstract, but we infer from matters stated or assumed by the parties in the record presented that the claim sued upon was in substance that defendant had served as plaintiff's agent in the sale of certain automobiles and had failed to account for and pay over to his principals certain moneys coming into his hands on their account. To this petition, defendant filed an answer alleging full performance by him of his written contract with the plaintiffs and further set up a counterclaim to the effect that plaintiffs were indebted to him for commissions earned in the sale of certain automobiles and for other commissions on sales negotiated by him for the completion of which plaintiffs neglected or failed to furnish or deliver the necessary cars and also for the one-half of the necessary expenses of the agency, making an aggregate sum of $400 for which he demands recovery.

When the case came on for trial, the plaintiff Youtsey was ill and unable to be present and the petition was voluntarily dismissed without prejudice. Defendant refused to dismiss his counterclaim and plaintiff pleaded thereto and trial was had to the court on the issues so joined. It must be said that the issues are not clearly stated in the abstract and seem to involve controversies which, on plaintiff's theory

of the facts, would seem to be improperly joined, but no objection is raised on that score, and perhaps the real nature of the case will be best apprehended by setting out the findings and conclusions which the trial court reduced to writing and filed in the case. They are as follows:

### FINDINGS AND CONCLUSIONS.

In the above cause it is found:—

1. From March 1st to December 12th, 1912, Frank Youtsey and Bert Vaughn were co-partners under the name of the Blue Grass Auto Company, engaged in the selling, as agent, of automobiles at Chariton, Iowa, and that T. F. Lemley was a sub-agent of the co-partnership selling automobiles at Russell, Iowa, on a share of fifty per cent of the commissions earned from the sales made by him of automobiles.

2. Under an arrangement between Frank Youtsey and T. F. Lemley, Youtsey was to have all of the commissions earned on the sale of the first five cars sold by Lemley, and neither Bert Vaughn nor the Blue Grass Auto Company at any time had any interest in said commissions.

In the remainder of commissions derived from the sale of other cars by Lemley the Blue Grass Auto Company was to receive one-half of the commissions and is liable for one-half of the expense of making the sales by Lemley at Russell.

3. There is no evidence before the court showing that Frank Youtsey ever authorized Bert Vaughn to enter into the agreement with Lemley which written agreement is in evidence as exhibit one, or that he ever knew it was entered into or was conversant with the contents thereof, and there is no evidence that he ever authorized the Blue Grass Auto Company to collect the commissions on the first five cars sold by Lemley or to, in any manner, be interested in said commissions.

The claims in the pleadings and on the trial of the case, made by Lemley are as follows:

(A) Claim for $120.00 of the commissions on sale of a Chalmers car to E. A. Smith, is not established.

(B) Claim for $75.00 of the commission of sale of the Overland car to Charles Allen, is established in that amount.

(C) Claim for one-half of the commissions amounting to $150.00 on three cars which Lemley claims to have sold and which cars were not furnished by the Blue Grass Auto Station, is not established.

(D) Claim for $45.00 due on expense account. The evidence shows as an expense, covered by the arrangement between the parties, rent to the amount of $16.00, one-half of which, $8.00, is established, the remainder of this item is not.

On the claim made by Frank Youtsey for commissions on the sale of the first five cars it is found that he received and accepted as commission on one of the cars a secondhand car that was received as a part of the sale price of one of the five cars. The commissions on the remainder of the five cars amount to $432.00. It has not been established that the check exhibit 3 in evidence, executed by T. F. Lemley and in favor of Bert Vaughn for $342.40, was a payment on the commissions due Frank Youtsey on the first five cars sold by him, and if it was so intended by Lemley then it is not established that Vaughn had any right or authority to receive the check, or that he ever delivered the money or any part of it to Frank Youtsey, and therefore cannot be allowed as a credit on this claim made by Youtsey.

## RECAPITULATION.

Amount found due T. F. Lemley from Blue
  Grass Auto Co.......................$ 83.00
Amount found due Frank Youtsey from T.
  F. Lemley .......................... 432.00
Balance in favor of Frank Youtsey and
  against Lemley ...................... 349.00

The plaintiff shall pay one-third of the costs, and the de-

fendant Lemley the remainder. Judgments to be entered accordingly. September 13, 1913.

From this judgment defendant has appealed.

I. The first exception argued is that the findings of the trial court are not supported by the evidence.

The largest item in dispute is a claim made by the plaintiff Youtsey for the commission or profit on four Ford cars. The substance of his claim is that he personally purchased from the defendant an agency contract for Ford cars within a certain territory and that as a part of the consideration of said purchase, defendant undertook to act as his sub-agent and to sell for him five Ford cars without commission and to account to said Youtsey for all the profit arising from such sales. It is plaintiff's further claim that a partnership entered into by him with one Vaughn about that time or soon after the purchase of the agency had no interest in the commission or profits from the sale of the five cars here mentioned. Defendant does not deny his undertaking to sell the five cars without commission but avers that the agreement with Youtsey was made for the partnership of Youtsey and Vaughn or the "Blue Grass Auto Company," under which name it conducted its business. In any event, he says the original contract was merged in a written contract afterward made between him and the partnership, acting by Vaughn, and that in pursuance of such agreement he accounted for and paid the promised commission or profits to Vaughn for the benefit of the firm. Youtsey denies the authority of Vaughn to contract with reference to these commissions or collect them and avers that the same have never been paid or accounted for. This dispute was decided by the trial court in favor of Youtsey, and if there was any substantial conflict in the evidence upon this proposition, the finding of the court is the equivalent of a jury verdict and we cannot properly disturb it. We have examined the record in this respect

1. PARTNERSHIP: authority of partner: private affairs of co-partner.

and are satisfied that the finding complained of has fair support in the testimony. Indeed defendant's own testimony is to the effect that the original deal was between him and Youtsey individually. He says, ''I was in the automobile business prior to the time Mr. Youtsey went into the business. I sold out to him. He paid me $800 for my contract and the selling of five cars. I contracted with him in regard to remaining in possession and selling the Ford automobiles. The last contract was made with the Blue Grass Auto Company of which he was a member. I then continued to sell Ford automobiles under this subsequent contract and the only contract I had with reference to commissions was made with the Blue Grass Auto Company of which Mr. Youtsey was a member.'' As this statement clearly supports and corroborates the plaintiff's theory of the facts, the court was justified in finding that the agreement to account for the entire profits on the first five cars sold was made with Youtsey and that he alone was entitled thereto. The credit given him by the court in making up the account must therefore be sustained, unless we are to hold that the contract subsequently made between defendant and the Blue Grass Auto Company, acting by Vaughn, operated to transfer the credit due Youtsey to the account of the partnership and that defendant has paid or accounted to it for that amount. Counsel for appellant seem to argue that it was within the authority of Vaughn as a partner to thus make the debt due from defendant a subject of contract between the partnership and defendant and thus work a transfer of the credit. But this cannot be correct. Doubtless Vaughn as partner had authority to bind his firm by contract with defendant concerning dealings already had between him and the firm as well as the terms on which their business should thereafter be conducted, but this did not, and under the most elementary principles of the law of partnership could not, authorize him in his own name or in the name of the firm to enter into any contract or agreement by which the debt due Youtsey alone should become due to the firm or

to authorize the payment of the debt either to Vaughn or to
the firm. At the time this contract was made with Vaughn,
Youtsey had become sick and so far as appears was not then
nor was he afterwards able to transact business. There is
no evidence that he had any actual knowledge or notice that
Vaughn had assumed authority to make any agreement affect-
ing his right to the profits on the five cars or that defendant
claimed to have paid or accounted therefor to Vaughn. It is
true that when her husband became disabled, Mrs. Youtsey
undertook to exercise some degree of care over his business
interests, but it is made evident from defendant's testimony
that he resented her interference and refused to acknowledge
any authority on her part and dealt solely with Vaughn. She
testifies that she had no knowledge of the contract with refer-
ence to the five cars mentioned, and that while she had infor-
mation that an agency contract had been made between de-
fendant and the partnership acting by Vaughn, it was never
shown her and she had no knowledge of its terms in this re-
spect until the partnership was dissolved, December 12, 1912.
This evidence is also sufficient to sustain the trial court in
failing or refusing to hold that plaintiff had ratified the act
of Vaughn.

Again, were we to assume that a payment to Vaughn or
to the firm would be a defense to this action, such defense is
of an affirmative character and the burden was upon defend-
ant to establish it by a preponderance of the
evidence. We are quite certain that he failed
to make such conclusive showing of payment

2. PAYMENT:
pleading: bur-
den of proof.

to the firm that we can say the fact is established as a matter
of law. In fact his testimony is quite unsatisfactory. When
first upon the stand he testified that the money for the profits
on the five cars had been paid by him into the bank to take
up a note given by the firm. Near the close of the trial, he
was recalled and testified that the greater part of the claim
had been paid by a check of $342.40 made payable to Vaughn
personally. He had no book account of the matter and much

of his statement in reference to it is in the nature of broad conclusion, as for example, "I paid them all that was coming from the profits." "I settled up with Vaughn after I sold those cars and paid him off all that was coming to him." "I made a report to Mr. Vaughn when we settled up. I would make a few deals and come down and figure how things stood and we settled up. That is the only kind of a settlement I made. At these times I paid him all the commissions that were due him. I do not recollect how much it was." Even when he had refreshed his memory by the discovery of the check, the most he could say was, "I think the profits of the first four cars were included in that settlement." Being asked by his counsel to refer to his book and satisfy himself on that subject, he then answers, "Yes, that is the way it was;" and yet he immediately proceeds to say, "I kept no books except a fly leaf book and whenever I made a settlement I tore it off. Did not keep any record. Have nothing in my possession whereby I could refresh my memory and be able to tell the court the items which entered into settlements in regard to profits or commission due the Blue Grass Auto Station Company from the sale of Ford cars. I have no record in regard to these matters." To put it very mildly, evidence of this kind can hardly be said to establish payment beyond dispute. Nor does Vaughn, when called in corroboration, make the case any clearer. Being asked whether that check was paid as a balance due on settlement between him and Lemley and included the first four cars, he said, "Yes, sir; that is in one settlement but I cannot say whether it is the first settlement. That check was given for a settlement between the Blue Grass Company and Lemley for the commission on cars and accessories due at the date of the check. Could not say whether it was settlement due at that time in full or not." Taking the record in this regard as a whole, it affords sufficient support of the plaintiff's claim and the finding of the trial court cannot be set aside.

Of the defendant's claim for one-half the commission on

the sale of three cars other than Fords, no question is made except on the issue of fact. Under the contract for sales so procured by him, he was entitled to receive one-half of the commission earned. The controversy is over the question whether these sales were induced or brought about by the act or effort of the defendant. The court below found in his favor as to one of them and against him on the other two. Without extending this opinion to set out the testimony, we think it sufficient to say that these findings have support in the record. It is not our province to pass upon the credibility of the evidence or upon its preponderance. It is sufficient if there be any evidence which if believed by the trial court fairly tends to support its findings, and such we find to be the case.

The only other item of counterclaim is for agency expenses which under the contract were to be shared equally. The amount is alleged to be $45. As a witness, defendant testified, ''There was a balance due me at the commencement of this action for expenses as sub-agent of about $45.'' On further examination, he was unable to state any item of this expense except a matter of two months' rent at $8 per month. On this showing the court allowed him for one-half the rent, $8.00, and for no more. The correctness of this finding is not open to question, As an agent claiming reimbursement for expenses, it was incumbent upon him to make a showing of the facts from which the nature, amount and propriety of the expenditures may be ascertained. A general sweeping swear to the conclusion that ''there is a balance due me for expenses of about $45'' proves nothing.

The only finding of fact to which an exception can be sustained is that in computing the amount of the commission or profit on the five cars for which defendant should be held to account, there appears to have been a mistake of thirty dollars. It is shown without dispute that the commission on one of these cars was received by Youtsey in the form of an old car taken in exchange, and defendant is therefore charge-

able in this action with commission on four only, which he says he sold at substantially schedule prices. Of the four, two were touring cars at the schedule price of $720 each and two roadsters, at $620 each. The commission on these sales at fifteen per cent, the agreed rate, is $402, instead of $432 as found by the trial court. The mistake was evidently made in assuming that the four cars were all of the touring car model and charging up each at the full rate of $720.

II. Vaughn, being examined as a witness for the defendant, was asked to state, ''What if any of the profits or commissions on any of these cars sold by Lemley remains unsettled for, other than the last two Ford cars?''

3. EVIDENCE: opinions: conclusions: justifiable exclusion.

To this, plaintiff's objection that the question was leading, incompetent and not rebuttal was sustained and defendant assigns error thereon. While the answer might have perhaps been admitted without prejudicial error, its exclusion may be approved on several grounds. The question in effect would permit the witness to draw his own conclusions as to what amounts to a settlement. The defendant did not, by suggestion or offer, disclose what facts he expected to elicit from the witness by the question objected to. Again, if the witness had knowledge of any specific fact or facts bearing upon the controversy whether plaintiff's claim had been paid or otherwise adjusted, his attention could easily have been directed thereto and his answers would presumably have been admitted by the court. Still further, this witness had in fact been interrogated concerning his knowledge of the details of the business and of his own part therein, and the inquiry was in effect a request for him to state the legal effect of his own acts in the premises.

The wife of Youtsey, testifying in his behalf, was permitted to say that under the terms of the purchase of the Ford agency, it was agreed that the commissions on the five cars which the defendant undertook to sell should be paid to her husband, and this is said by appellant to have been

incompetent because it tends to contradict or vary the terms of the written contract. This objection is disposed of adversely to the appellant by our holding that the written contract referred to, made by Vaughn in the name of the partnership, is void and of no effect in so far as it attempts to dispose of a credit due to Youtsey in his private or individual capacity and that no ratification of such contract by Youtsey was shown.

III. Error is also assigned upon the refusal of the trial court to grant a new trial because of the alleged discovery of new evidence tending to support the defendant's case. The basis is the affidavit of one Rockey, cashier of a bank with whom the parties had done business, to the effect that Youtsey borrowed the money from the bank on his individual notes, with which he made the original purchase from defendant, and ten days later, not being paid, the note was renewed by Youtsey, who represented or promised that Vaughn would also sign the paper, and that thereafter, at the request of Youtsey or his wife, the affiant presented the note to Vaughn for his signature and he signed it. He also states that the note was afterward paid by Mrs. Youtsey. There was no error in denying the motion. The witness was a man well known to all the parties, a resident of the neighborhood and was in attendance on the trial below. The fact that Youtsey had borrowed the money from the bank was developed on the trial and it naturally suggested further inquiry by the defendant into the history of that obligation, how it was paid and whether Vaughn had any interest in the transaction. This was not done and the witness was not called. It cannot well be claimed that due diligence has been shown on part of appellant. It may also be said that conceding the truth of the affidavit, it is just as consistent with the theory that Youtsey was the real or principal debtor and Vaughn a surety only as it is with the theory that the debt was a partnership debt or that Vaughn had acquired any property right

4. NEW TRIAL: newly discovered evidence: diligence.

or interest in the commissions or profits, which it is clearly
shown were by the original agreement between defendant and
Youtsey to belong to the latter. Sufficient ground for the
granting of a new trial was not shown and the motion was
properly overruled.

For the reasons stated, the judgment of the district court
will be modified by deducting thirty dollars from the amount
of plaintiff's recovery as of the date thereof and as thus modi-
fied it will be affirmed. The costs of this court will be taxed
three-fourths against the defendant and one-fourth against
the plaintiff.—*Modified* and *Affirmed*.

DEEMER, C. J., EVANS and PRESTON, JJ., concur.